UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| TYRELL CURTIS ERLEBACH, | |
| Plaintiff, | **Case No. 1:18-cv-173-BLW** |
| v. | |
| RAJ ENTERPRISES OF CENTRAL FLORIDA, LLC d/b/a PINNACLE LABORATORIES d/b/a PINNACLE LABORATORY SERVICES d/b/a PINNACLE LABS, MILLENIUM HEALTH, LLC, MILLS BRINSON III BSMT, CLD, K & K TREATMENT, ROSTAD GPS & MONITORING SERVICES, LLC, KIM ROSTAD d/b/a  K & K TREATMENT, K & K BAIL BONDS LLC d/b/a K & K TREATMENT, DENNIS *STOKES in his individual and official capacities*, PAYETTE COUNTY, PAYETTE COUNTY SHERIFF'S OFFICE, PAYETTE COUNTY SHERIFF CHAD HUFF *in his individual and official capacities*, PAYETTE COUNTY BOARD OF COMISSIONERS, PAYETTE COUNTY COMMISSIONER MARK SHIGETA *in his individual and official capacities*, PAYETTE COUNTY COMMISSIONER LARRY CHURCH *in his official and individual capacities*, PAYETTE COUNTY COMMISSIONER CAROL BRUCE *in her official and individual capacities*, PAYETTE COUNTY COMMISSIONER GEORGIA HANIGAN *in her individual and official capacities*, ANNE MARIE KELSO, SCOTT LANEY, JOSEPH JOHNSON, and JOHN DOES 1 through XXX. | **MEMORANDUM DECISION AND ORDER** |
| Defendants. | |

# INTRODUCTION

The Court has before it Defendant Millennium Health LLC's Motion to Dismiss (Dkt. 36); Defendant Dennis Stokes' Motion to Strike (Dkt. 61); Defendant Scott Laney's Motion for Summary Judgment (Dkt. 77); and Plaintiff Tyrell Curtis Erlebach's Motion to Amend/Correct Complaint (107). For the reasons explained below, the Court will grant Defendant Millennium Health LLC's Motion to Dismiss, grant Defendant Dennis Stokes' Motion to Strike, deny Defendant's Scott Laney's Motion for Summary Judgment as premature, and grant in part and deny in part Plaintiff's Motion to Amend/Correct Complaint.

# BACKGROUND[1]

Plaintiff Tyrell Curtis Erlebach ("Plaintiff") is a former licensed physician's assistant specializing in providing physician assistant services in cardiac surgery.[2] *FAC*, ¶ 33, Dkt. 107-1. In January of 2016, Plaintiff was charged in connection with a domestic disturbance in *State v. Erlebach*, Payette County Case Number CR 2016-0154. *Id.*, ¶ 34. Plaintiff posted a bond in the amount of $200,000 for his pretrial release. *Id.*, ¶

---

[1] The Court must accept as true all factual allegations contained in a complaint when deciding a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[2] Plaintiff filed his initial complaint on April 18, 2018. *Complaint*, Dkt. 1. After Defendant Millennium Health LLC moved to dismiss, Plaintiff ultimately sought leave to amend the complaint and filed a Proposed First Amended Complaint on December 6, 2018. *Proposed Amended Complaint*, Dkt. 107-1. Because the Court grants in part Plaintiff's Motion to Amend, the Court will hereinafter refer to the facts of the case as recited in the Proposed Amended Complaint (hereinafter First Amended Complaint, "FAC").

38. As a condition of his release, Plaintiff was required to report to the Payette County Misdemeanor Probation Office and follow release conditions which included not consuming or possessing alcoholic beverages and submitting to testing for alcohol and/or drugs as required by his probation officer. *Id*.

At the time of Plaintiff's release from jail, Defendant Payette County had a contract with Indianhead Resources, LLC pursuant to which Indianhead promised to "perform all supervision duties for persons with pretrial release conditions as ordered by a judge in Payette County." *Id*., ¶ 39.2. Such supervision duties included, but were not limited to, signing people up for drug and/or alcohol testing, referring such individuals to an appropriate facility, monitoring the reports of drug and/or alcohol testing, and reporting any failed drug or alcohol tests to the Court. *Id*. Defendant Dennis Stokes, through his corporation Indianhead Resources, served as the Misdemeanor Probation Officer for Payette County. *Id*., ¶ 41. Plaintiff alleges Stokes in turn contracted with Defendant K & K Treatment to provide random drug and alcohol testing of the individuals Stokes referred. *Id*., ¶ 64.

It is not clear from the FAC precisely what services K & K Treatment agreed to provide to either Indianhead Resources or to Payette County. However, upon his release from detention in early 2016, Stokes referred Plaintiff to K & K Treatment to provide urine samples for drug and alcohol analysis. *Id*., ¶ 138. Plaintiff went to a K & K Treatment facility to provide urine samples on January 25, February 4, February 8,

February 26, March 3, and April 14, 2016.  *Id.*, Ex. 2, p. 2.[3]  K & K Treatment sent

Plaintiff's urine samples from each of these dates to Defendant Pinnacle Laboratory

Services for evaluation and analysis.[4]  *Id.*  Although each of his previous reports had

been negative, Pinnacle Laboratory Services reported Plaintiff's urine sample from April

14, 2016 tested positive for alcohol.  *Id.*  Specifically, Pinnacle Laboratory Services

reported positive findings for ethyl glucuronide and ethyl sulfate.  *Id.*  Ethyl glucuronide

and ethyl sulfate are minor metabolites of alcohol found in both blood and urine up to 36

hours after alcohol consumption.  *Id.*, p. 3.

The results of Plaintiff's April 14, 2016 urinalysis were reported to Defendant

Stokes, who then conveyed the results to the Payette County Prosecuting Attorney's

office.  *FAC*, ¶ 62.  The Payette County Sheriff's Office and Payette County District

Court were also notified of Plaintiff's "positive" alcohol test, and Plaintiff was ultimately

arrested and incarcerated for failure to comply with his conditions of pretrial release.  *Id.*,

¶ 159.  Plaintiff alleges he was forced to post a second bond and suffered injury to his

---

[3] This citation is to the expert report from Plaintiff's Kenn Meneely, Consultant for Willamette Valley Forensics, LLC.  Plaintiff attached Willamette Valley Forensics' report to both the complaint and the FAC.  "In deciding a motion to dismiss for failure to state a claim, the court generally should not consider materials outside the complaint and pleadings.  However, the court may consider attachments to the complaint and any document referred to in (even if not originally appended to) the complaint, when the authenticity of such a document is not in question."  *Brown v. Miller Brewing Co.*, 2014 WL 201699, *3 (Idaho 2014) (citing *Cooper v. Pickett*, 137 F.3d 616, 622-23 (9th Cir. 1997)).

[4] Plaintiff refers to Defendants RAJ Enterprises of Central Florida, LLC, Pinnacle Laboratories, Pinnacle Laboratory Services and Pinnacle Labs collectively as "Pinnacle Laboratory Services."  *Id.*, ¶ 2.  The Court will do likewise in this decision.

reputation caused by one or more stories reported in the local newspaper regarding his alleged failure to comply with the conditions of his supervised release. *Id.*, ¶ 161. Plaintiff also alleges he was ultimately barred from practicing his profession as a physician's associate as "a direct and proximate result" of the "acts and omissions of the Defendants." *Id.*, ¶ 214.

Confident that Pinnacle Laboratory Services' report was a "false positive," Plaintiff immediately hired Willamette Valley Forensics to review Pinnacle Laboratory Services' results. Willamette Valley Forensics' report suggests the analysis conducted by Pinnacle Laboratory Services was not scientifically reliable because: (1) the cutoff level utilized by Pinnacle Laboratory Services was inappropriate to use as a tool to evaluate alcohol consumption and could lead to misinterpretation; (2) Pinnacle Laboratory Services did not report an error rate as commonly provided by accredited laboratories; (3) Plaintiff's "positive" values of ethyl glucuronide and ethyl sulfate represented trace levels of alcohol; (4) such "positive" values also represented levels below the laboratory's instrument capabilities to produce credible results; (5) use of chemical products such as vanilla extract, hygiene products, mouthwash, or cough syrup will also produce trace levels of ethyl glucuronide and ethyl sulfate; (6) the levels reported for Plaintiff's specimen were consistent with his use of common household products such as hand sanitizer, aftershave and vitamins, which can be absorbed through dermal tissues or inhalation and can be misinterpreted as alcohol ingestion resulting in a false positive; and

(7) laboratory reports must be interpreted by a qualified medical individual or toxicologist. *Id.*, Ex. 2, p. 7.

Although Plaintiff criticizes Pinnacle Laboratory Services and its report for each of these errors, the last is key to the inclusion of Millennium Health as a defendant in this action. To ensure scientific reliability, the Willamette Valley Forensics report indicates that lab reports like those issued by Pinnacle Laboratory Services must be reviewed by a qualified medical individual or toxicologist. *Id.* Like Pinnacle Laboratory Services, Millennium Health provides analysis of, and reporting on, urine samples provided for forensic drug and alcohol testing. *FAC*, ¶ 65. On April 2, 2015, K & K Treatment registered as a new client with Millennium Health. *Id.*, Ex. 1, p. 1. Prior to this registration, Plaintiff alleges Defendant Scott Laney, an employee of Millennium Health, advised K & K Treatment that he knew Alisha Phillips, a family nurse practitioner working in Payette, and suggested that Phillips could serve as K & K Treatment's medical director. *FAC*, ¶ 68. Laney agreed to contact Phillips to see if she would be interested in this role, but purportedly failed to do so. *Id.* Nevertheless, Laney represented to K & K Treatment that Phillips had agreed to act as K & K Treatment's authorized medical provider. *Id.* The April 2, 2015 New Client Registration form between Millennium Health and K & K Treatment designated Phillips as K & K Treatment's "Authorized Healthcare Provider." *Id.*, Ex. 1. Phillips' signature also appeared on the New Client Registration Form. *Id.* Plaintiff alleges Millennium Health or "its agents Defendant Laney and/or Defendant [Joseph] Johnson" forged Phillips'

signature on the New Client Registration Form. *FAC*, ¶ 99. Defendant Joseph Johnson was also an employee of Millennium Health. Phillips' signature continued to appear on drug and alcohol analysis reports ordered by K & K Treatment after it registered as a new client of Millennium Health. *Id.*, ¶ 101.

At some time prior to Plaintiff's April 14, 2016 urinalysis test, Laney ended his employment with Millennium Health. *Id.*, ¶ 82. Plaintiff alleges, "[w]hen Defendant Laney was no longer employed by [Millennium Health] he and/or [Johnson] diverted the analysis of drug/alcohol testing ordered by [K & K Treatment] from [Millennium Health] to [Pinnacle Laboratory Services]." *Id.* Plaintiff suggests Laney and Johnson misrepresented to Pinnacle Laboratory Services that Phillips would continue to serve as K & K Treatment's authorized medical provider. *Id.*, ¶ 84-85. K & K Treatment is identified as the client, and Phillips is identified as the "Doctor," on Pinnacle Laboratory Services' urinalysis of Plaintiff's April 14, 2016 urine sample. *Id.*, Ex. 1. Phillips is also identified as the "Doctor," or ordering medical provider, on each of Plaintiff's five negative urinalysis tests analyzed by Pinnacle Laboratory Services at the request of K & K Treatment prior to April 14, 2016. *FAC*, ¶ 104. However, Phillips is not a doctor qualified to review drug and alcohol tests, did not order or review tests of Plaintiff's urine samples, and did not agree to monitor or review any drug or alcohol tests for Millennium Health, K & K Treatment, or Pinnacle Laboratory Services. *Id.*, ¶¶ 104-5.

In late April 2016, Phillips first learned she was improperly identified as the "Doctor" on lab reports associated with random drug and alcohol tests arranged by K &

K Treatment when Plaintiff's criminal defense attorney contacted Phillips and asked her to review Pinnacle Laboratory Services' positive report of Plaintiff's April 14, 2016 urine sample. *Id.*, ¶ 108. Phillips had never heard of K & K Treatment and did not understand how she had been identified as the "Doctor" on the Pinnacle Laboratory Services report. *Id.*, ¶ 109. Phillips contacted Defendant Kim Rostad, owner of K & K Treatment, and was told her name was listed as "Doctor" on hundreds of lab reports issued by both Millennium Health and Pinnacle Laboratory Services associated with random drug tests arranged by K & K Treatment. *Id.*, ¶ 110. Rostad also told Phillips that Laney and Johnson had "assisted K & K Treatment with the necessary arrangements to have [Millennium Health] perform the testing associated with K & K Treatment's random drug and alcohol testing business." *Id.* In addition, Laney and Johnson purportedly "identified Alisha Phillips as K & K Treatment's authorized medical provider or 'Doctor' associated with K & K Treatment's random drug and alcohol testing business" without Phillips' authorization or knowledge. *Id.*, ¶ 119.

Millennium Health filed a Motion to Dismiss Plaintiff's original complaint on August 15, 2018. *Motion to Dismiss*, Dkt. 36. The original complaint did not reference any of the allegations regarding Laney and Johnson's misrepresentations to K & K Treatment and Pinnacle Laboratory concerning Phillips. In its Motion to Dismiss, Millennium Health contends Plaintiff cannot establish the duty element of his negligence claim because Pinnacle Laboratory, a competitor of Millennium Health, analyzed Plaintiff's specimen and sent the "false positive" report to K & K Treatment.

*Memorandum in Support of Motion to Dismiss*, Dkt. 36-1, p. 5. Further, Millennium

Health contends it was not involved with the collection, receipt, testing, analysis, or

reporting of Plaintiff's specimen. *Id.*, p. 6. Although the Court grants in part Plaintiff's

Motion to Amend, Plaintiff still fails to state a claim for negligence against Millennium

even with the allegations regarding Laney and Johnson. For the reasons explained below,

the FAC does not adequately allege a duty owed by Millennium to Plaintiff. The Motion

to Amend is accordingly denied with respect to Plaintiff's allegations against Millennium

Health, and Millennium is dismissed as a defendant in this action.

## ANALYSIS

### 1. MILLENNIUM HEALTH'S MOTION TO DISMISS (Dkt. 36)

### A. Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement

of the claim showing that the pleader is entitled to relief," in order to "give the defendant

fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic v.

Twombly*, 550 U.S. 544, 555 (2007). While a complaint "does not need detailed factual

allegations," it must set forth "more than labels and conclusions, and a formulaic

recitation of the elements of a cause of action will not do." *Id.* To survive a motion to

dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a

claim to relief that is plausible on its face." *Id.* at 570. A claim has facial plausibility

when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged. *Id.* at 556. The

plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Id*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id*. at 557.

The Supreme Court identified two "working principles" that underlie *Twombly* in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). First, the court need not accept as true legal conclusions that are couched as factual allegations. *Id*. Rule 8 does not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678-79. Second, to survive a motion to dismiss, a complaint must state a plausible claim for relief. *Id.* at 679. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

A dismissal without leave to amend is improper unless it is beyond doubt that the complaint "could not be saved by any amendment." *Harris v. Amgen, Inc.*, 573 F.3d 728, 737 (9th Cir. 2009). The Ninth Circuit has held that "in dismissals for failure to state a claim, a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss and Liehe, Inc. v. Northern California Collection Service, Inc.,* 911 F.2d 242, 247 (9th Cir. 1990). The issue is not whether plaintiff will prevail but whether he "is entitled to offer evidence to support the claims."

*Diaz v. Int'l Longshore and Warehouse Union, Local 13*, 474 F.3d 1202, 1205 (9th Cir. 2007) (citations omitted).

**B. Plaintiff's Negligence Claim Against Millennium Health**

Millennium Health argues Plaintiff fails to state a claim for negligence against it because Pinnacle Laboratory Services conducted the testing, analysis and reporting on Plaintiff's urine specimen, and Millennium has no affiliation with Pinnacle. *Memorandum in Support of Motion to Dismiss*, Dkt. 36-1, p. 2. As such, Millennium contends Plaintiff cannot establish it owed any duty to Plaintiff.

To state a claim for negligence, Plaintiff must demonstrate (1) a duty, recognized by law, requiring the defendant to conform to a certain standard of conduct; (2) breach of that duty; (3) a causal connection between defendant's conduct and the resulting injuries; and (4) actual loss or damage. *Brizendine v. Nampa Meridian Irrigation Dist*., 548 P.2d 80, 83 (Idaho 1976). "No liability exists under the law of torts unless the person from whom relief is sought owed a duty to the allegedly injured party." *Vickers v. Hanover Constr. Co., Inc*., 875 P.2d 929, 932 (Idaho 1994) (citing *Bowling v. Jack B. Parson Cos*., 793 P.2d 703, 705 (Idaho 1990)). The existence of a duty of care is a question of law to be decided by the court. *Jones v. Starnes*, 245 P.3d 1009, 1012 (Idaho 2011).

The FAC alleges Pinnacle Laboratory Services and Millennium Health "had a duty to Plaintiff Erlebach and other similarly situated individuals to use reasonable care to apply generally accepted scientific standards to the administration, analysis and reporting of drug/urine tests to prevent the reporting of false positives." *FAC*, ¶ 224.

Whether laboratories owe a duty to the individuals whose specimens they test is a developing area of the law. An "overwhelming majority of the courts that have decided this issue held that a laboratory owes a duty to those whose specimen it tests." *Quisenberry v. Compass Vision, Inc.*, 618 F.Supp.2d 1223, 1228 (S.D. Cal. 2007) (collecting cases). However, several courts have rejected this conclusion, holding the law does not recognize a duty of care to test subjects. *See, e.g., Tricoski v. Lab. Corp. of Am.*, 216 F.Supp.2d 444, 445-46 (E.D. Pa. 2002); *Herbert v. Placid Ref. Co.*, 564 So.2d 371, 374 (La.Ct.App. 1990); *Mission Petroleum Carriers, Inc. v. Solomon*, 106 S.W. 3d 705, 710 (Tex. 2003); *Cooper v. Lab. Corp. of Am. Holdings, Inc.*, 181 F.R.D. 317 (D. S. Carolina 1997). Regardless, none of the cases could be read so broadly to support the argument that a lab, such as Millennium, owed a duty to all test subjects, whether the lab played any role in testing or not.

Critically, Plaintiff does not claim his "false-positive" result was generated by Millennium Health. The lab report of Plaintiff's April 14, 2016 specimen is attached to the FAC and identifies Pinnacle Laboratory Services as the testing laboratory. *FAC*, Ex. 1. Although K & K Treatment used both Millennium Health and Pinnacle Laboratory for drug and alcohol testing, the FAC expressly states the relationship between Millennium and K & K Treatment ended in late 2015, before Plaintiff was even initially arrested, let alone monitored for compliance with the terms of his supervised release. *FAC*, ¶ 121. Further, K & K Treatment utilized Pinnacle Laboratory, not Millennium, to test Plaintiff's specimen each of the six times Plaintiff reported to K & K Treatment. *FAC*,

Ex. 2, p. 2. While in conducting its own drug and alcohol tests, Millennium may have a duty to use reasonable care and apply generally accepted scientific standards to prevent false positives, such duty clearly does not extend to individuals tested by unaffiliated laboratories.

The cases finding a laboratory or third-party administrator owes a duty to the individuals they test for illicit substances are helpful in illustrating why Plaintiff cannot establish Millennium Health owed him a duty. For instance, in *Quisenberry v. Compass Vision, Inc.*, 618 F.Supp.2d 1223 (S.D. Cal. 2007), Plaintiff was a nurse who worked under the supervision of the California State Board of Nursing. Defendant Compass Vision, Inc. contracted with the Board to administer alcohol testing programs for nurses, and Defendant Quest Diagnostics, Inc. contracted with the Board to provide alcohol testing facilities. Due to her history of alcohol abuse, Quisenberry agreed to undergo a recovery program. Pursuant to her contract with the Board, Quisenberry was required to submit to random drug and alcohol tests. Quisenberry alleged the alcohol testing program run by Compass and Quest set forth an extremely low reporting limit, and that, as a result, defendants negligently reported a false positive to the Board, causing the suspension and pending revocation of her nursing license. *Id*. at 1226.

The *Quisenberry* Court noted "whether laboratory facilities owe a duty of care to the individuals whose specimens they test at the request of others is an issue of first impression in this jurisdiction. Nevertheless, our extensive review of the myriad of cases in other jurisdictions makes it clear that the overall trend is for the courts to recognize

that a laboratory owes a duty to its test subject, regardless of whether a contractual

relationship exists between them." *Id*. at 1228.  The Court also conducted its own

analysis prior to imposing a duty of care on Compass and Quest.  Specifically, in

determining whether a duty of care exists, the *Quisenberry* Court balanced the following

factors: (1) foreseeability of harm to the plaintiff; (2) the degree of certainty that the

plaintiff suffered injury; (3) the closeness of the connection between the defendant's

conduct and the injury; (4) the extent to which the transaction was intended to affect the

plaintiff; (5) the extent of the burden to the defendant and consequences to the

community of imposing a duty of care; (6) the moral blame attached to the defendant's

conduct; (7) the availability, cost, and prevalence of insurance for the risk involved; and

(8) the policy of preventing future harm.  *Id*. at 1229-30.

Although *Quisenberry* was decided under California law, Idaho courts also apply a

"balancing of harm" analysis in circumstances where, as here, a plaintiff seeks to "extend

a duty beyond the scope previously imposed, or when a duty has not previously been

recognized." *Rife v. Long*, 908 P.2d 143, 148 (Idaho 1996).  Under such circumstances,

determining whether a duty exists involves a consideration of policy and the weighing of

the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered

injury, the closeness of the connection between the defendant's conduct and the injury

suffered, the moral blame attached to the defendant's conduct, the policy of preventing

future harm, the extent of the burden to the defendant and the consequences to the

community of imposing a duty to exercise care, and the availability, cost, and prevalence of insurance for the risk involved. *Id.*

As to the first factor, foreseeability of harm, the *Quisenberry* Court held it was "fully foreseeable that a mishandling or inaccurate reporting of laboratory test results can harm the individual whose specimens the laboratory is testing." *Id.* Quisenberry also satisfied the second factor because she alleged she was suspended from work and awaiting revocation of her nursing license due to defendants' inaccurate reporting of her test results. The Court continued:

> Furthermore, the connection between Defendants' conduct and Plaintiff's injury here is not doubtful or remote. If, in fact, Plaintiff was injured by Defendants' conduct, there is a close connection between the conduct and her injury. Moreover, the laboratory testing of Plaintiff's specimens was fully intended to affect Plaintiff. Defendants were well aware that—depending on the outcome of the test—a test result measuring Plaintiff's level of alcohol consumption could have a direct effect on Plaintiff's employment status. With regard to the availability of insurance and the moral blame factors, the evidence on the record is insufficient to balance these facts. Finally, in balancing the burden on Defendants with the need to prevent future harm, the Court finds that any potential burden on Defendants is outweighed by the need to protect the public from the consequences of erroneous laboratory test results. Moreover, the Court is not persuaded that an imposition of duty on laboratories to act with due care when handling specimens and reporting test results will lead to unwarranted extension of liability.

*Id.*

By contrast, the balancing test weighs heavily in favor of finding Millennium Health did not have a duty to Plaintiff. First, while Millennium may foresee that mishandling or inaccurately reporting test results can harm the individuals it tests, Millennium Health had no way of foreseeing harm to individuals, like Plaintiff, with whom it had no interaction. Second, while Plaintiff may have suffered injury as a result

of Pinnacle Laboratory's false positive report, Millennium Health did not issue, and could not control, Plaintiff's urinalysis. As such, the connection between Millennium Health's conduct and Plaintiff's injury is remote. Millennium Health had no interaction with Plaintiff and could not have intended to affect him or his compliance with the terms of supervision. While the Court cannot evaluate the availability of insurance and moral blame factors at this time, the balancing of the burden on Defendants with the need to prevent future harm also weighs in favor of Millennium Health. Drug and alcohol testing companies would cease to exist if they were burdened with potential liability from all individuals injured by a false positive report, regardless of whether they tested such individuals or not. The Court declines to recognize a common law duty under the circumstances of this case.

Plaintiff argues Pinnacle Laboratory Services "and/or" Millennium Health were "in the best position to prevent false positives, and therefore had a duty to ensure against false positives that could result in profound consequences for a test subject." *FAC*, ¶ 227. Although Millennium Health may have a duty to ensure against false positive results for the individuals it tests, it has no ability to control false positives generated by another laboratory, let alone a duty to do so.

Plaintiff also suggests Millennium is vicariously liable for the actions of Laney and Johnson, its employees. As detailed above, Plaintiff claims Laney and Johnson represented to Rostad that Phillips had agreed to act as K & K Treatment's authorized health provider without Phillips' knowledge or consent, forged Phillips' name on the

New Client Registration Form between Millennium Health and K & K Treatment, did not

advise K & K Treatment that Phillips was not assessing Millennium Health's results, and

failed to ensure a qualified health official reviewed Millennium Health's tests. However,

Millennium Health never performed any of Plaintiff's drug and alcohol tests. It thus did

not owe Plaintiff a duty to ensure its tests were reliable. Because Millennium Health was

not under an obligation to use care to avoid or prevent injury to Plaintiff, the FAC fails to

state a claim for negligence against Millennium Health despite Laney and Johnson's

alleged actions. *Chatterton v. Pocatello Post*, 223 P.2d 389, 390 (Idaho 1950) (one

cannot recover for the negligent acts of another absent breach of a legal duty); *Martin v.

Twin Falls School Dist. No. 411*, 59 P.3d 317, 321 (Idaho 2002) (a defendant's lack of

due care is irrelevant unless the defendant owed plaintiff a duty); *see also* MODERN TORT

LAW: LIABILITY AND LITIGATION § 3:13 (2d ed.) (2018) ("a conclusion that no duty

exists is equivalent to a rule that a defendant may not be held accountable for damages

the defendant causes, no matter how unreasonable the defendant's conduct.").

Plaintiff also notes a contractual duty can give rise to a duty to exercise reasonable

care and suggests Millennium Health owed him a duty because Millennium Health

contracted with K & K Treatment "to analyze and report on random urine/drug tests

administered to K & K Treatment's clients, including Plaintiff." *Response to Motion to

Dismiss*, Dkt. 49, p. 7. The FAC alleges Millennium Health "had a duty, as a contracting

party with K & K Treatment, to exercise reasonable care in the performance of its

duties." *FAC*, ¶ 226. Even if Millennium Health had a contract to provide such services

to K & K Treatment, a fact not established anywhere in the FAC or by the New Client

Registration Form attached to the FAC, Plaintiff does not offer any allegations to support

the inference that Millennium Health was under any contractual obligation to test or

analyze his specimen. Moreover, the FAC alleges Laney and/or Johnson "diverted the

analysis of drug/alcohol testing ordered by [K & K Treatment] from [Millennium] to

[Pinnacle]," and K & K Treatment "switched" from Millennium's lab to Pinnacle's lab in

late 2015. *FAC*, ¶ 82-83, 121. Thus, even if Plaintiff could establish K & K Treatment

and Millennium Health had a contract which obligated Millennium to ensure the

reliability of the tests K & K Treatment ordered from Millennium, such obligation

undoubtedly ceased once K & K Treatment moved its business to a different company.

The allegations in the FAC establish Plaintiff's specimen was not analyzed by

Millennium Health and that Millennium had ended its relationship with K & K Treatment

several months before the April 14, 2016 test at issue in this case. As such, the FAC

implies Millennium had a duty to audit the business practices of both its competitor

(Pinnacle Laboratory) and its former customer (K & K Treatment). Such a contention is

without support in either the facts of this case or in the law. Because Plaintiff has failed

to plausibly allege Millennium Health owed him a duty, he cannot state a claim for

negligence claim against Millennium Health. Millennium Health's Motion to Dismiss is

accordingly granted.

## 2.  STOKES' MOTION TO STRIKE (Dkt. 61)

Federal Rule of Civil Procedure 12(f) permits a court to "strike from a pleading…any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  "A motion to strike is appropriate to address requested relief, such as punitive damages, which is not recoverable as a matter of law."  *Wilkerson v. Butler*, 229 F.R.D. 166, 172 (E.D. Cal. 2005).  Where, as here, a federal court has diversity jurisdiction, "the question of whether to permit a claim for punitive damages is substantive in nature and is accordingly controlled by relevant Idaho case law." *Strong v. Unumprovident Corp.*, 393 F.Supp.2d 1012, 1025 (D. Idaho 2005) (citing *Doe v. Cutter Biological*, 844 F.Supp. 602, 610 (D. Idaho 1994)); *see also Windsor v. Guarantee Trust Life Ins. Co.*, 684 F.Supp. 630, 633 (D. Idaho 1988) (Idaho Code § 6-1604(2) is substantive in nature and therefore controlling in federal court in a diversity case).  Under Section 6-1604(2), a party cannot make a claim for punitive damages in a prayer for relief.  Idaho Code § 6-1604(2) (1990). Instead, "a party may, pursuant to a pretrial motion *and after hearing before the court*, amend the pleadings to include a prayer for relief seeking punitive damages."  *Id*. (emphasis added).

Plaintiff included a request for punitive damages in both his original complaint and the FAC.  Plaintiff has not sought leave of the Court to add such claim, and a hearing has not been held.  Nor has Plaintiff properly identified which Defendants against whom he seeks punitive damages.  *FAC*, Dkt. 107-1, p. 53 (general prayer for "punitive damages in the amount of $3,000,000.")  At this stage in the proceedings, Plaintiff has

failed to comply with the procedural steps required under Idaho Code § 6-1604(2). Plaintiff's claim for punitive damages is accordingly improper and is stricken from Plaintiff's prayer for relief.[5]  Of course, Plaintiff is free to later request that he be granted leave to pursue a punitive damage claim following the statutory procedure.

### 3.  LANEY'S MOTION FOR SUMMARY JUDGMENT (Dkt. 77)

Laney filed his Motion for Summary Judgment on October 21, 2018, two months before the December 6, 2018 deadline for an amended complaint, ten months before the August 30, 2019 deadline for fact discovery, and one year before the October 18, 2019 deadline for dispositive motions set by this Court.  *Case Management Order*, Dkt. 55.  In response to Laney's Motion for Summary Judgment, Plaintiff requests relief pursuant to Federal Rule of Civil Procedure 56(d) to allow him time to engage in discovery to obtain the facts necessary to oppose Laney's Motion.  *Response to Motion for Summary Judgment*, Dkt. 82.  Under Rule 56(d), a court may deny or continue a motion for summary judgment if an opposing party can show that "for specified reasons, it cannot present facts essential to justify its opposition."  Fed. R. Civ. P. 56(d).

When a motion for summary judgment is "filed so early in the litigation, before a party has had any realistic opportunity to pursue discovery relating to its theory of the

---

[5] Although Stokes filed the initial Motion to Strike, many of the Defendants in this action have since joined the request.  *Joinder in Motion to Strike by Defendant Scott Laney*, Dkt. 65; *Joinder in Motion to Strike by K & K Treatment, et. al.*, Dkt. 69.  Due to his failure to comply with Idaho Code § 6-1604(2), Plaintiff's punitive damages claim is stricken the FAC at this time with respect to all Defendants.

case, district courts should grant any Rule 56(f) motion fairly freely." *Burlington Northern Santa Fe Railroad Co. v. Assiniboine and Sioux Tribes of Fort Peck Reservation*, 323 F.3d 767 (9th Cir. 2003) (discussing Federal Rule of Civil Procedure 56(f), Rule 56(d)'s predecessor). Although the rule gives courts discretion to disallow discovery when the non-moving party cannot yet submit evidence supporting its position, "the Supreme Court has restated the rule as requiring, rather than merely permitting, discovery 'where the non-moving party has not had the opportunity to discover information that is essential to its opposition.'" *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 846 (9th Cir. 2001) (citations omitted); *Wichita Falls Office Assoc. v. Banc One Corp.*, 978 F.2d 915, 919 n. 4 (5th Cir. 1992) (under FRCP 56(d), a "continuance of a motion for summary judgment for purposes of discovery should be granted almost as a matter of course unless the non-moving party has not diligently pursued discovery of the evidence.").

Because it was filed before the FAC, Laney's Motion for Summary Judgment is premised on Plaintiff's inability to establish Millennium Health owed a duty to Plaintiff. Laney argues Plaintiff similarly fails to state a claim against him because he was simply a salesperson for Millennium Health, a company which had nothing to do with the drug test in question. *Motion for Summary Judgment*, Dkt. 77, p. 2. Although the Court agrees Plaintiff cannot establish Millennium Health owed him a duty, the FAC includes allegations which may support finding Laney liable to Plaintiff due to Laney's interaction with K & K Treatment and/or Pinnacle Laboratory Services.

Specifically, the FAC alleges Laney was an agent, employee or representative of Pinnacle Laboratory Services, Laney diverted the analysis of drug/alcohol testing ordered by K & K Treatment from Millennium Health to Pinnacle Laboratory Services, Laney prepared and submitted paperwork to Pinnacle Laboratory Services representing Phillips would serve as K & K Treatment's authorized medical provider, Laney knew or should have known Phillips was not an authorized medical provider for K & K Treatment, and Laney acted in the scope of his employment with either Pinnacle Laboratory Services or K & K Treatment when the arrangements were made for Pinnacle Laboratory Services to conduct drug and alcohol tests of the individuals, like Plaintiff, whom K & K Treatment supervised.  *FAC*, ¶¶ 82-86.  Although Laney denies each of these allegations, Plaintiff has not had the opportunity to depose Laney, or any of the other defendants, or to obtain any discovery from Laney other than his initial disclosures.[6]

Where, as here, documentation or witness testimony may exist that is dispositive of a pivotal question—namely, the role Laney played in the negligence (if any) of the remaining defendants, granting summary judgment is premature and Plaintiff should be permitted to proceed with discovery pursuant to Rule 56(d).  The Court accordingly denies Laney's Motion for Summary Judgment.

---

[6] As detailed in Plaintiff's Counsel's declaration in support of Plaintiff's Request for Relief Pursuant to FRCP 56(d), Plaintiff has diligently pursued discovery in this matter.  *Seiniger Decl*., Dkt. 81.

## 4. PLAINTIFF'S MOTION TO AMEND (Dkt. 107)

Plaintiff filed his Motion to Amend before the Court's deadline to amend the pleading or to add new parties, but after the defendants had responded to his initial complaint.  The Court accordingly looks to Federal Rule of Civil Procedure 15(a)(2) in deciding whether to grant or deny Plaintiff's Motion to Amend.  Fed. R. Civ. P. 15(a)(2); *AmerisourceBergen Corp. v. Dialysis West, Inc*., 465 F.3d 946, 953 (9th Cir. 2006). Although Rule 15(a)(2) requires a Plaintiff to seek consent from the other party or leave of the Court to amend after a responsive pleading has been filed, the rule further states, "[t]he court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2). This policy is to be applied "with extreme liberality."  *Eminence Capital, LLC v. Aspeon, Inc*., 316 F.3d 1048, 1051 (9th Cir. 2003) (internal quotations omitted).  The Supreme Court has counseled leave to amend should be "freely given" absent: (1) undue delay; (2) bad faith or dilatory motive on the part of the movant; (3) repeated failure to cure deficiencies by amendments previously allowed; (4) undue prejudice to the moving party; or (5) futility of the amendment.  *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Millennium Health and Laney are the only defendants who have opposed Plaintiff's Motion to Amend.[7]   Both argue the Court should deny Plaintiff's Motion due to futility of the amendment.  "An amendment is futile when 'no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient

---

[7] K & K Treatment filed a Notice of Non-Opposition to Plaintiff's Motion to Amend.  *Response to Motion Amend Complaint by K & K Treatment et. al*., Dkt. 113.

claim or defense.'" *Missouri ex rel. Koster v. Harris*, 847 F.3d 646, 656 (9th Cir. 2017) (quoting *Miller v. Rykoff-Sexton, Inc*., 845 F.2d 209, 214 (9th Cir. 1988)). The standard used to determine the legal sufficiency of a proposed amendment is identical to the one used when considering the sufficiency of a pleading challenged under Rule 12(b)(6). *Miller*, 845 F.2d at 214.

Millennium Health and Laney both argue amendment is futile because Plaintiff cannot establish either owed Plaintiff a duty. Although the Court finds Plaintiff cannot state a claim for negligence against Millennium Health because Millennium Health did not have a duty to Plaintiff, the same cannot be said for Laney. While the FAC takes a rather scattershot approach to alleging negligence, and attempts to plead every theory possible to suggest each defendant owed Plaintiff a duty, Plaintiff alleges K & K Treatment, as a third-party administrator of pretrial services for Stokes and/or Payette County, and Pinnacle Laboratory Services, as the lab that tested Plaintiff's specimen, had a duty to ensure analysis of urine samples collected from the individuals K & K Treatment supervised were reviewed and interpreted by a qualified medical individual. *See, e.g*., *FAC* ¶¶ 191, 203. Plaintiff also alleges Laney played a role in K & K Treatment and Pinnacle Laboratory Services' purportedly negligent failure to ensure the lab reports K & K Treatment administered and the tests Pinnacle Laboratory Services conducted were reviewed by a qualified medical provider. *Id*., ¶¶ 82-87.

Other courts have found laboratories, like Pinnacle Laboratory Services, and third-party administrators hired to conduct drug and alcohol testing, like K & K Treatment,

both owe a duty of care to the individuals they test. *See, e.g.*, *Quisenberry,* 618 F.Supp.2d at 1230-31; *Berry v. Nat'l Med. Servs.*, 205 P.3d 745, 750-51 (Kansas App. Ct. 2009); *Chapman v. Labone*, 460 F.Supp.2d 989, 1001(S.D. Iowa 2006); *Williams v. Nat'l Railroad Passenger Corp.*, 16 F.Supp.2d 178, 181-82 (D. Conn. 1998); Duncan v. Afton, Inc., 991 P.2d 739, 740 (Wyo. 1999).

As discussed above, the *Quisenberry* decision supports finding K & K Treatment and/or Pinnacle Laboratory Services owed Plaintiff a duty. Unlike Millennium Health, who did not administer, test, or report on Plaintiff's sample, K & K Treatment and Pinnacle Laboratory Services were both responsible for such analysis. Although somewhat vague, the FAC alleges Laney played a role in the negligence of both K & K Treatment and Pinnacle Laboratory Services, whether as an employee or agent for either company. As such, Laney may be found to have owed Plaintiff a duty through his role with either K & K Treatment or Pinnacle Laboratory Services, and the proposed amendment to the complaint is not futile with respect to Laney.[8] The Court accordingly grants in part Plaintiff's Motion to Amend.

---

[8] Laney also suggests Plaintiff's negligence claim against him fails because he is protected from liability under Idaho's Product Liability Act as a "product seller." *Laney's Memorandum in Opposition to Plaintiff's Motion to Amend Complaint*, Dkt. 110, pp. 9-10 (citing Idaho Code § 6-1407). The FAC alleges Laney forged Phillips' name on documents, facilitated the transfer of K & K Treatment's business to Pinnacle Laboratory Services, and misrepresented to K & K Treatment and/or Pinnacle Laboratory Services that Phillips was reviewing urinalysis results ordered by K & K Treatment and conducted by Pinnacle Laboratory Services. Given such allegations, the Court cannot find Laney was simply a seller of drug tests at this stage in the proceedings.

## ORDER

**IT IS ORDERED:**

1.      Millennium Health's Motion to Dismiss (Dkt. 36) is **GRANTED** with prejudice.  Millennium Health is dismissed as a defendant in this action;

2.      Stokes' Motion to Strike (Dkt. 61) is **GRANTED**.  Plaintiff's claim for punitive damages against all defendants is stricken from the FAC;

3.      Laney's Motion for Summary Judgment (Dkt. 77) is **DENIED** without prejudice to such a motion being filed after discovery has taken place;

4. Plaintiff's Motion to Amend (Dkt. 107) is **DENIED** in part and **GRANTED** in part.  Because the FAC fails to state a claim against Millennium Health, the Motion to Amend is **DENIED** with respect to Millennium Health.  The allegations regarding Millennium Health are stricken from the FAC.  The Motion to Amend is **GRANTED**, and the FAC is accepted, with respect to the remaining Defendants.

DATED: January 3, 2019

B. Lynn Winmill
U.S. District Court Judge