UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| TYRELL CURTIS ERLEBACH,<br><br>            Plaintiff,<br><br>     v.<br><br>RAJ ENTERPRISES OF CENTRAL FLORIDA, LLC, et al.,<br><br>            Defendants. | Case No. 1:18-CV-00173-MDH |

### ORDER

Before the Court are Defendants Carol Bruce's, Larry Church's, Georgia Hanigan's, Chad Huff's, Anne Marie Kelso's, Payette County's, Payette County Board of Commissioners', Payette County Sheriff's Office's, and Mark Shigeta's (collectively, "Payette County Defendants") Motion for Summary Judgment (Doc. 184); Defendants Rostad GPS & Monitoring Services LLC's, Kim Rostad d.b.a K&K Treatment's, K&K Bail Bonds LLC d.b.a K&K Treatment's (collectively, "Rostad Defendants") Motion for Summary Judgment (Doc. 188); and Defendant Dennis Stokes' Motion for Summary Judgment (Doc. 191). For the reasons set forth herein, all Motions for Summary Judgment (Docs. 184, 188, 191) are **GRANTED** in their entireties.

### BACKGROUND

In January of 2016, Plaintiff was arrested, and subsequently charged with several felonies, all occurring in Payette County. Bail was set at $200,000, and the magistrate at first appearance ordered Plaintiff, as a condition of bail, not to consume alcoholic beverages. Plaintiff was ordered to report to the Misdemeanor Probation Office. That office was administered by an individual,

1

Denis Stokes, who had contracted with the county to provide pretrial services in addition to supervision of misdemeanor probationers. The contractor's duties included "supervision duties for persons with pretrial release conditions as ordered by a judge." Among the duties agreed upon were to sign up persons on pretrial release for alcohol monitoring, monitoring reports of alcohol testing, and reporting "to the Court of any failed...alcohol tests."

On April 20, 2016, the district court issued a bench warrant for the arrest of Plaintiff, finding that there was probable cause to believe that Plaintiff had violated conditions of pretrial release. The court further ordered that bail be set in the amount of $30,000 on the bench warrant, and the court interlineated "or release in 72 hours in jail." The Payette County booking sheet shows that Plaintiff was booked into the jail the same day, posted bond, and was out of jail in 25 minutes. On May 20, 2016, the district court exonerated bond after "being fully apprised of Defendant's objection to a positive alcohol test, as a false positive."

Plaintiff's retained expert opines that Pinnacle Laboratories, the lab that analyzed Plaintiff's urine sample and created the false positive report, had several shortcomings:

- The cutoff level utilized by Pinnacle Laboratory was inappropriate to use as a tool to evaluate alcohol consumption and can lead to misinterpretation
- Pinnacle Laboratory did not report an error rate as commonly done by accredited laboratories
- The "corrected values" of 67.2 and 22.3 for EtG and EtS represents trace levels. These "levels" also represent values below the laboratory's instrument capabilities to produce credible results
- The chemical products utilized [by Plaintiff] will produce trace levels of EtG and EtS
- The reported levels are consistent with the association/contact of the described chemicals and can be misinterpreted as alcohol ingestion (i.e. false positive)
- At a minimum, 500 ng/ml or higher must be used for positive cut-off values for EtG and EtS levels to eliminate false positive interpretations

(Doc. 128-1, Ex. 2). Plaintiff's expert identifies no misconduct or even relevant action on the part of the Defendants that could have contributed to or affected Pinnacle Laboratory's false positive report.

Plaintiff has brought claims against several defendants in his Amended Complaint (Doc. 128) stemming from the false positive result. Plaintiff against Payette County, individuals serving as its Board of Commissioners, the Payette County Sheriff's Office as well as the Payette County Sheriff individually and the former Payette County Prosecuting Attorney (collectively, "Payette County Defendants"). The basis for Plaintiff's lawsuit against the municipality and its decisionmakers is (1) negligence, and, (2) 42 U.S.C. § 1983 based upon failure to adequately train and supervise amounting to deliberate indifference.

Plaintiff furthermore brought claims against Dennis Stokes, an employee of Indianhead Resources, LLC, ("Indianhead") which contracts with Payette County as an independent contractor to provide misdemeanor probation services for the County. Plaintiff brings (1) a negligence claim and (2) a 42 U.S.C. § 1983 claim against Stokes.

Lastly, Plaintiff brings suit against K & K Treatment; Rostad GPS & Monitoring Services, LLC; Kim Rostad, d.b.a. K & K Treatment; K & K Bail Bonds, LLC, d.b.a. K & K Treatment (collectively, "Rostad Defendants") alleging negligence only.

**A. Defendant Stokes**

Defendant Stokes is the sole employee of Indianhead. Indianhead entered into a contract with Payette County ("County") on May 1, 2015 to provide misdemeanor probation services. The contract renews automatically each fiscal year. Indianhead serves as an independent contractor for the County, and Stokes is not an employee of the County.

Stokes supervised Plaintiff during the time Plaintiff was court-ordered to comply with pretrial conditions of release. Stokes referred Plaintiff to Rostad GPS & Monitoring Services, LLC ("Rostad") for his drug and/or alcohol testing. Plaintiff submitted to a drug and/or alcohol test at Rostad on April 14, 2016. After the subject sample was collected, Rostad sent the sample to Pinnacle Laboratory Services ("Pinnacle"). Pinnacle then analyzed the subject sample and created a report of its findings. Pinnacle's report of the subject sample indicated a positive result for Ethyl Glucuronide and Ethyl Sulfate. The report of the subject sample was then sent back to Rostad which then forwarded the report to Stokes. Payette County had no contract with Pinnacle.

The report received by Defendant Stokes showed "positive" results for Ethyl Glucuronide (EtG) and Ethyl Sulfate (Ets). (Doc. 128-1, Ex. 1). There was no other information on the report that would have directed Stokes to read the "positive" results in any other way, nor was there any sort of chart or guide instructing how to further interpret any portion of the report. *Id*.

Soon after Stokes received a copy of the report that indicated Plaintiff tested positive for alcohol use, Stokes submitted a Failure to Comply with Court Order Affidavit ("Affidavit") to the Court, which indicated that Plaintiff had failed to comply with his conditions of release as ordered by the Court. After Stokes submitted his Affidavit to the Court on April 19, 2016, the Court revoked Plaintiff's bond and issued a warrant for his arrest.

On May 17, 2016, Stokes received from Rostad a follow-up report from Pinnacle concerning the original subject sample. This follow-up report included an additional paragraph in the "comments" section (which had been blank on the original report) which indicated that the positive alcohol test could have been the result of other circumstances besides the consumption of alcohol. It stated:

> FINAL REPORT – 5/10/2016
> Negative ethyl alcohol results recovered by EIA screening. Positive ETG and ETS (ethanol metabolites) results recovered indicating exposure to ethyl alcohol within the past 72 hours. ETG and ETS results are to be considered non-forensic testing, for medical purposes only. Positive results may indicate ingestion of, or exposure to ethyl alcohol within the past 72 hours. These results will not differentiate between ethyl alcohol consumed from medications (over the counter cold or cough formulas) or from other sources. Positive ETG and ETS results may also indicate recent skin exposure to alcohol-containing hand sanitizers and/or disinfectants. Under certain conditions, ETG may also be produced in vitro (outside of the body in the sample container) by certain bacteria which may be present in the urine sample.

(Doc. 128-1, Ex. 3). After receiving a copy of Pinnacle's follow-up report, Stokes submitted that report with a follow-up Affidavit on May 17, 2016, indicating to the court that Pinnacle Laboratory had determined that Plaintiff's sample may have been a false positive. As a result of that affidavit, the court held a hearing on May 20, 2016. At the hearing, the court exonerated Plaintiff's bond and lifted the requirement that Plaintiff had to submit to drug and/or alcohol testing.

### B. Rostad Defendants

Defendants K & K Treatment, Rostad GPS and Monitoring Services LLC; and K & K Bail Bonds LLC are all owned and controlled, in whole or in part, by Defendant Kim Rostad. Random drug and alcohol testing of Plaintiff was conducted by Rostad Defendants under a contract between Rostad and Payette County, through Payette County's agent Defendant Stokes/Indianhead or a third-party. (Doc. 128 at ¶ 64). Plaintiff provided a urine sample to Rostad on April 14, 2016. The sample was sent by Rostad Defendants to and evaluated by Pinnacle. At that time, Rostad used Pinnacle to analyze and report on drug/alcohol testing conducted by Rostad. On April 18, 2016, a report was sent to Rostad Defendants by Pinnacle indicating a positive result concerning alcohol. As noted above, that result was later determined to be a "false positive" or otherwise unreliable.

### C. Payette County Defendants

Idaho Code § 1-1613 provides, "[e]ach county in the state shall provide suitable and adequate facilities for the district court, including the facilities and equipment necessary to make the space provided functional for its intended use, and shall provide for the staff, personnel, supplies, and other expenses of the district court."

Pursuant to this statutory duty, on or about May 1, 2015, Payette County and Indianhead entered into a Contract for Misdemeanor Probation Services ("Contract") which states that Indianhead will "provide active supervision of adults placed on supervised misdemeanor probation…perform all supervision duties for persons with pretrial release conditions as ordered by a judge in Payette County…." The Contract also states that Indianhead "is an independent contractor and is not an employee, servant, agent, partner, or joint venture of Payette County." Payette County contracted with Rostad Defendants to conduct random drug and alcohol testing for the County through the County's agent Defendant Stokes/Indianhead, or third-party. Payette County had no contract with Pinnacle. Payette County Defendants had no other active role with respect to pretrial services or misdemeanor probation services.

## STANDARD

One of the primary purposes of the summary judgment rule is to "isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24, 106 S.Ct. 2548 (1986). Summary judgment is proper if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FRCP 56(a). On a motion for summary judgment, the court must determine, when viewing the facts in the light most favorable to the nonmoving party, whether there exists any genuine issue of material fact. *Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 922 (9th Cir. 2004). Material facts are those that may

affect the outcome of the case. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248, 106 S.Ct. 2505 (1986). A genuine issue of material fact exists only if there is sufficient evidence for a reasonable jury to find in favor of the non-moving party. *See Id.*

Motions for summary judgment are governed by a shifting burden of proof under Rule 56. *Nursing Home Pension Fund, Local 144 v. Oracle Corp*. (*In re Oracle Corp. Sec. Litig.*), 627 F.3d 376, 387 (9th Cir. 2010). The moving party bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any which it believes demonstrate the absence of material fact." *Celotex*, 477 U.S. at 323 (internal quotation omitted).

Once the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine dispute as to a material fact actually exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 585-86, 106 S.Ct. 1348 (1986). In order to defeat summary judgment, the opposing party must establish the existence of a factual dispute that is both material and genuine. *See Anderson,* 477 U.S. at 248*; Fortune Dynamic, Inc. v. Victoria's Secret Store Brand Mgmt., Inc*., 618 F.3d 1025, 1031 (9th Cir. 2010); *Freecycle Sunnyvale v. Freecycle Network*, 626 F.3d509, 514 (9th Cir. 2010). If the non-moving party fails to do this, then "the moving party is entitled to judgment as a matter of law." *Celotex*, 477 U.S. at 323.

The Ninth Circuit has emphasized that summary judgment may not be avoided merely because there is some purported factual dispute, but only when there is a "genuine issue of material fact." *Hanon v. Dataproducts, Corp.*, 976 F.2d 497, 500 (9th Cir. 1992). The Ninth Circuit has found that in order to resist a motion for summary judgment:

> [T]he non-moving party (1) must make a showing sufficient to establish a genuine issue of fact with respect to any element for which it bears the burden of proof; (2)

must show that there is an issue that may reasonably be resolved in favor of either party; and (3) must come forward with more persuasive evidence than would otherwise be necessary when the factual context makes the non-moving party's claim implausible.

*British Motor Car Distributors, Ltd. v. San Francisco Automotive Indus. Welfare Fund*, 882 F.2d 371, 374 (9th Cir. 1989).

## DISCUSSION

### A. Federal Claims

#### a. Defendant Stokes

Plaintiff asserts that Defendant Stokes violated Plaintiff's civil rights pursuant to 42 U.S.C. § 1983. In order to establish a § 1983 claim, a plaintiff must show two things: (1) "deprivation of a right secured by the Constitution or laws of the United States," and (2) "that the defendant acted under color of state law." *Kirtley v. Rainey*, 326 F.3d 1088, 1092 (9th Cir.2002). A § 1983 action typically does not lie against a private person. *Id*. It is presumed that private individuals and entities do not act "under color of state law" within the meaning of § 1983. *Rabieh v. Paragon Systemslnc.,* 316F.Supp.3d 1103, 1109 (2018).

While Plaintiff included Stokes as a "Governmental Defendant" in his Amended Complaint, it is undisputed that Stokes serves as an independent contractor—through Indianhead Resources, LLC ("Indianhead")—to provide misdemeanor probation services for Payette County ("County"). Payette County contracted with Rostad Defendants to conduct random drug and alcohol testing for the County through the County's agent Defendant Stokes/Indianhead, Stokes argues that because he is not an employee of the County, he did not act under the color of state law as required by § 1983.

However, "[w]hile generally not applicable to private parties, a § 1983 action can lie against a private party when 'he is a willing participant in joint action with the State or its agents.'"

8

*Kirtley v. Rainey*, 326 F.3d 1088, 1092 (9th Cir. 2003), quoting *Dennis v. Sparks*, 449 U.S. 24, 27, 101 S.Ct 183, 66 L.Ed.2d 185 (1980). The 9th Circuit has identified at least four criteria used to identify state action: (1) public function, (2) joint action, (3) governmental compulsion or coercion, and (4) governmental nexus. *Id.* Satisfaction of any one test is sufficient to find state action, so long as no countervailing factor exists. *Id.*

The Court agrees with Plaintiff that Defendant Stokes likely was a "willing participant in joint action with the State or its agents," in the course of his duties performing misdemeanor probation services for the district court. *Kirtley*, 326 F. 3d at 1092. However, even assuming Stokes is a proper party to a § 1983 action, the evidence is woefully inadequate to conclude that Stokes violated any constitutional rights of Plaintiff under § 1983. Plaintiff does not identify the actions or inactions of Defendant Stokes which would be actionable under § 1983. Nor has Plaintiff provided any facts to establish Stokes wrongfully or inaccurately reported the positive test result to the court based on the report he received.

The evidence is undisputed that Defendant Stokes received a copy of a drug/alcohol test and forwarded it to the Court. Plaintiff has not provided any evidence that would indicate that Stokes' actions here violated Plaintiff's rights. Furthermore, while Plaintiff's expert described how Pinnacle may have erred in the course in creating its false positive report, Plaintiff provides no evidence that Stokes, as a pretrial services officer, failed to accurately communicate with the court based on the information available to him. Plaintiff's supports his allegations with mere argument, not fact. This is insufficient. *See Anderson,* 477 U.S. at 248*; Fortune Dynamic, Inc. v. Victoria's Secret Store Brand Mgmt., Inc*., 618 F.3d 1025, 1031 (9th Cir. 2010); *Freecycle Sunnyvale v. Freecycle Network*, 626 F.3d509, 514 (9th Cir. 2010). Plaintiff provides no reason Stokes should have doubted the accuracy of the initial test result and report from Pinnacle.

Furthermore, Stokes would also be entitled to absolute immunity. Absolute immunity is reserved to those persons "performing a duty functionally comparable to one for which officials were rendered immune at common law." *Swift v. State of California*, 384 F.3d 1184, 1190 (9th Cir. 2004) (quoting *Miller v. Gammie*, 335 F.3d 889, 897 (9th Cir. 2003) (en banc)). The Ninth Circuit has repeatedly held that judges and other officers of government whose duties are related to the judicial process are immune from liability for damages under § 1983 for conduct in the performance of their official duties. *Burkes v. Callion*, 433 F.2d 318, 319 (1970); *Agnew v. Moody*, 330 F.2d 868 (9th Cir. 1964); *Harmon v. Superior Court*, 329 F.2d 154 (9th Cir. 1964). "An official derives the appropriate degree of immunity not from his or her administrative designation, but by the function he or she performs." *Swift*, 483 F.3d at 1188 (quoting *Anderson v. Boyd*, 714 F.2d 906, 908 (9th Cir.1983)).

Defendant Stokes maintains that he, at all times relevant to this case, was acting on behalf of the court and/or as a judicial officer and is entitled to immunity. Plaintiff, as noted, maintains that Stokes did act under the color of state law through his actions with the court. It has been established that the functions of a deputy probation officer are an integral part of the judicial process so as to afford immunity from suit under the Civil Rights Act. *Friedman v. Younger*, 282 F. Supp. 710, 716 (1968). Specifically, a probation officer who prepares and submits a probation report in a criminal case is performing a 'quasi-judicial' function and is entitled to a similar, if not the same, immunity that is accorded to judges for acts done by them in the exercise of their judicial functions. *Burkes*, 433 F.2d at 319; *see Demoran v. Witt*, 781 F.2d 155, 157-58 (9th Cir.1985) (probation officers do receive absolute immunity for preparing and submitting pre-sentence reports). The rationale is that when a probation officer prepares and submits a probation report on a defendant in a criminal case, such officer is performing a 'quasi-judicial' function, in that they

are acting under orders of the Court in rendering a report to that Court. *Friedman*, 282 F.Supp. at 716. Further, in performing such actions, the probation officer is engaging in impartial fact gathering for the judge, and to allow liability would impair the judge's ability to carry out his judicial duties. *Demoran*, F.2d at 157.

In this case, Defendant Stokes was ordered by the Court to supervise Plaintiff during Plaintiff's conditional release. Plaintiff was ordered by the Court to submit to drug and/or alcohol testing as a part of his conditions of his release. As part of his supervision duties, Defendant Stokes was to monitor Plaintiff's drug and/or alcohol test results and submit any positive result to the Court. When Defendant Stokes submitted the Failure to Comply with Court Order Affidavit ("Affidavit") on April 19, 2016, Defendant Stokes was performing a "quasi-judicial" function in that he was submitting a positive drug and/or alcohol test report to the Court. *See Friedman*, 282 F.Supp. at 716. After Stokes submitted his Affidavit to the Court, the matter was entirely outside of his control, and any actions or inactions concerning the alcohol tests was wholly at the discretion of the district judge. It is undisputed that the decision to issue a bench warrant was made by the Court, not Defendant Stokes. Similarly, the Court Judge decided or determined the need for a second bond, not Defendant Stokes.

Plaintiff does not point to any language, cite any other law, or provide reasoning for why well-established case law, such as *Demoran v. Witt*, does not apply to the instant case. While Defendant Stokes was not a probation officer and his duties did not include preparing presentencing reports, Plaintiff ignores that "an official derives the appropriate degree of immunity not from his or her administrative designation, but by the function he or she performs." *Swift*, 384 F.3d at 1188 (quoting *Anderson*, 714 F.2d at 908). Stokes performs analogous duties to the probation officer by submitting impartial factual reports to the court.

11

For the foregoing reasons, the Court finds that Plaintiff's allegations against Defendant Stokes are not supported by sufficient facts, and therefore cannot survive Defendant Stokes' motion for summary judgment. The Court also finds that Defendant Stokes is entitled to absolute immunity for his actions taken in relationship to Plaintiff as they were quasi-judicial in function. Because there remains no genuine issue of material fact, summary judgment is entered in favor of Defendant Stokes with respect to the § 1983 claim asserted against him by Plaintiff.

### b. Payette County Defendants

Plaintiff has brought claims against Payette County, individuals serving as its Board of Commissioners, the Payette County Sheriff's Office as well as the Payette County Sheriff individually and the former Payette County Prosecuting Attorney. Plaintiff asserts a § 1983 action against both the individually-named Payette County Defendants as well as the County itself based upon alleged failure to adequately train and supervise amounting to deliberate indifference. Plaintiff argues, "[a]s the individuals who hired and paid Stokes, the county commissioners and the sheriff unquestionably had a duty to properly determine his qualification as well as properly train and supervise him to prevent him from violating the rights of innocent people." (Doc. 213 at 3).

Pursuant to the County's duty under Idaho Code § 1-1613 to supply suitable staff and personnel for the court, Payette County entered into a contract to hire an independent contractor to supervise pretrial individuals who were released by a judge in Payette County pursuant to judicial arrangement. Toby Hauntz, Captain of the Payette County Sheriff's Office, was approached by Dennis Stokes and given a proposal to contract with Payette County to provide misdemeanor probation services, including pretrial release services. Captain Hauntz presented the proposal to the Payette County Commissioners who approved, and a Contract for Misdemeanor

Probation Services ("Contract") was entered into and signed by Larry Church on behalf of Payette County, Toby Hauntz on behalf of the Payette County Sheriff, and Dennis Stokes, as owner of Indianhead Resources, LLC. The Contract states that Indianhead Resources, LLC "is an independent contractor and is not an employee, servant, agent, partner, or joint venture of Payette County." Payette County also contracted with Rostad Defendants to conduct random drug and alcohol testing for the County through the County's agent Defendant Stokes/Indianhead. There is no evidence that the person or entities contracted by the County were not "suitable".

As with Defendant Stokes, discussed above, Plaintiff again fails to produce sufficient facts or evidence to support his argument that the County breached any alleged duty to Plaintiff. Plaintiff fails to show how Payette County did not comply with § 1-1613.[1] As far as the "suitable staff and personnel" requirement in § 1-1613 is concerned, Plaintiff provides no facts or reason why Payette County Defendants should have doubted the credentials of the parties it contracted with, Stokes/Indianhead and Rostad. Nor does Plaintiff provide any facts as to why the County should have doubted the credentials Pinnacle, an entity the County had not contracted with. Therefore, Plaintiff cannot adequately refute Payette County Defendants' contention that they did not violate § 1-1613 and did not breach any duty to Plaintiff. Once again, Plaintiff's contentions rely on mere argument rather than facts or evidence, which is insufficient to overcome a motion for summary judgment. *See Anderson,* 477 U.S. at 248; *Fortune Dynamic, Inc. v. Victoria's Secret Store Brand Mgmt., Inc.*, 618 F.3d 1025, 1031 (9th Cir. 2010); *Freecycle Sunnyvale v. Freecycle Network*, 626 F.3d 509, 514 (9th Cir. 2010).

Payette County also cannot be held liable in this case under the *Monell* doctrine. A municipality is liable under 42 U.S.C. § 1983 for monetary relief for the violation of a plaintiff's

---

[1] The Court notes that rights created by state stature are not federal rights and cannot normally be the basis of a § 1983 claim.

constitutional rights when the violation results from the municipality's official policy or custom. *Monell v. Department of Soc. Servs.*, 436 U.S. 658, 690 (1978). It is not liable for injuries inflicted by its employees so long as the acts of such employees are not pursuant to the government's policies or customs. *Id*. Thus, a municipal entity is not liable "solely because it employs a tort-feasor-in other words, a local government cannot be held liable under § 1983 on a *respondeat superior* theory." *Id*. at 691. In order to prevail against a municipality in a § 1983 claim, a plaintiff must show one of four things. These are: (1) a written policy demonstrating a constitutional violation; (2) proof of widespread custom or practice; (3) ratification by the policymakers; (4) or a constitutional violation by a policymaker.

A policy "generally implies a course of action consciously chosen from among various alternatives." *Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985). Municipal policies are typically intended to "establish fixed plans of action to be followed under similar circumstances consistently and over time." *Pembaur v City of Cincinnati*, 475 U.S. 469, 480-81 (1986). Further, enforcement of state law does not, without adopting any particular policy of its own, give rise to § 1983 liability. *Doby v. DeCrescenzo*, 171 F.3d 858 (3rd Cir. 1999).

Plaintiff argues that the single contract between Payette County and Defendant Stokes/Indianhead represents the County's policy on its training and supervision of persons who are subject to pretrial alcohol and drug testing. Plaintiff's argument is tenuous at best. The drug testing pursuant to the pretrial release program was a court-run program, funded by Payette County as required by Idaho Code § 1-1613 but not otherwise administered by Payette County.

Even if Payette County officials rather than court officials supervised the independent contractor, Plaintiff cannot establish deliberate indifference. As to a municipality, "the inadequacy of [training] may serve as the basis for § 1983 liability only where the failure to train amounts to

deliberate indifference to the rights of persons with whom the [employees] come into contact." *City of Canton v. Harris,* 489 U.S. at 388, 109 S.Ct. 1197. This means that Plaintiff "must demonstrate a 'conscious' or 'deliberate' choice on the part of a municipality in order to prevail on a failure to train claim." *Price,* 513 F.3d at 973. As to an official in his individual capacity, the same standard applies—Plaintiffs must show that individual Payette County Defendants were deliberately indifferent to the need to train subordinates, and the lack of training actually caused the constitutional harm or deprivation of rights. *Flores v. Cty. of Los Angeles*, 758 F.3d 1154, 1158–59 (9th Cir. 2014).

Under this standard, Plaintiff must allege facts to show that the Payette County Defendants "disregarded the known or obvious consequence that a particular omission in their training program would cause [county] employees to violate citizens' constitutional rights." *Id*. at 1159.

A "pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train," though there exists a "narrow range of circumstances [in which] a pattern of similar violations might not be necessary to show deliberate indifference." *Connick v. Thompson,* 131 S.Ct. 1350, 1360-61 (2011). Considering neither Plaintiff nor Defendants point to any incident prior to Plaintiff's April 14, 2016, false positive that would suggest any negligence or wrongdoing on the part of Defendants Stokes or Rostad, nothing put the Payette County Defendants on "notice that a course of training is deficient in a particular respect," nor that the absence of such a course "will cause violations of constitutional rights." *Id.* Payette County Defendants were not faced with a pattern of similar constitutional violations by untrained employees. *Id.* at 1360; *Flores*, 758 F.3d at 1159.

Nor does the County's alleged failure to train claim fall within the "narrow range of circumstances [in which] a pattern of similar violations might not be necessary to show deliberate

indifference." *Connick*, 131 S.Ct. at 1361 (internal citations omitted). In *City of Canton,* the "Court posed the hypothetical example of a city that arms its police force with firearms and deploys the armed officers into the public to capture fleeing felons without training the officers in the constitutional limitation on the use of deadly force." *Id.* at 1361 (internal citations and quotation marks omitted). In its hypothetical, the Court "sought not to foreclose the possibility, however rare, that the unconstitutional consequences of failing to train could be so patently obvious that a city could be liable under § 1983 without proof of a pre-existing pattern of violations." *Id.* As the Court observed, this hypothetical recognizes that "[t]here is no reason to assume that police academy applicants are familiar with the constitutional constraints of the use of deadly force." *Id.*

There is no basis from which to conclude that the alleged unconstitutional consequences of failing to train or supervise Stokes are so patently obvious that the Payette County Defendants were deliberately indifferent. *Flores*, 758 F.3d at 1159–60. Defendant Stokes contracted with the County to provide misdemeanor probation services. Stokes' role involved directing bailees to Rostad for the collection of a urine sample. Stokes later received a completed report of the sample back from Rostad—after Pinnacle analyzed the sample and returned it to Rostad. Stokes simply reported the results of that report to the court.

Plaintiff points to no facts that would suggest Payette County Defendants were deliberately indifferent to a need to train or supervise Defendant Stokes. Plaintiff asserts that Stokes was unqualified. However, as noted above, there are no facts before the Court that indicate that Defendant Stokes' actions were even the cause of Plaintiff's false positive and alleged constitutional deprivation. Stokes forwarded the lab results from Pinnacle exactly as they were received. As noted, there are no facts demonstrating that Defendants Stokes or Rostad had any previous incidents of producing false positives, negligence, or malpractice.

16

For the foregoing reasons, the Court finds that Plaintiff's allegations against Payette County Defendants are not supported by sufficient facts, and therefore cannot survive Payette County Defendants' motion for summary judgment. Plaintiff cannot establish that Payette County Defendants' alleged "policy" was the cause of the alleged violation of Plaintiff's constitutional rights, nor can Plaintiff identify any policies that violated his rights. Moreover, Plaintiff cannot establish that Payette County Defendants failed in any duty to train or supervise Defendant Stokes. There is no genuine issue of material fact. *See Celotex*, 477 U.S. at 325. Therefore, summary judgment is granted in favor of Payette County Defendants with respect to the § 1983 asserted against them.

### B. State Law Claims

Plaintiff brings state law claims of negligence against all Defendants. "The elements of a common law negligence action are (1) a duty, recognized by law, requiring the defendant to conform to a certain standard of conduct; (2) a breach of that duty; (3) a causal connection between the defendant's conduct and the resulting injury; and (4) actual loss or damage." *Holdaway v. Broulim's Supermarket*, 158 Idaho 606, 349 P.3d 1197 (2015), *quoting Black Canyon Racquetball Club, Inc. v. Idaho First Nat. Bank, N.A.*, 119 Idaho 171, 175-76, 804 P.2d 900 904-05 (1991).

As with the federal claims discussed above, Plaintiff's facts and evidence—or lack thereof—are woefully inadequate to create a genuine issue of material fact with respect to the common law negligence claim Plaintiff asserts against all defendants. Plaintiff generally, and without factual support, argues that all defendants had a duty to Plaintiff and breached that duty. For the foregoing reasons, and the further reasons discussed below, the Court finds that Plaintiff has not met his burden on summary judgment. *See Anderson,* 477 U.S. at 248*; Fortune Dynamic,*

*Inc. v. Victoria's Secret Store Brand Mgmt., Inc*., 618 F.3d 1025, 1031 (9th Cir. 2010); *Freecycle Sunnyvale v. Freecycle Network*, 626 F.3d509, 514 (9th Cir. 2010).

### a. Rostad Defendants

Plaintiff only brings a state law negligence claim against Rostad. Rostad Defendants played no role in testing Plaintiff's urine sample or publishing the results in any manner which was inconsistent with its contract with the County. There is nothing in the record, nor in Plaintiff's arguments, upon which one could reasonably infer that the Rostad Defendants failed to perform their responsibilities relating to the collection of Plaintiff's urine sample, relay of that sample to Pinnacle for testing, and subsequent relay of Pinnacle's results to Defendant Stokes/Indianhead. Moreover, the only evidence in the record suggests that it was Pinnacle's actions alone that led Plaintiff's alleged harm. From the evidence before the Court, Rostad Defendants had no reason to know that Pinnacle might act negligently nor did Rostad have any reason to doubt Pinnacle's credentials or ability to process samples Rostad Defendants sent to it. Therefore, summary judgment is appropriate, and summary judgment is granted in favor of Rostad Defendants.

### b. Defendant Stokes

Plaintiff's negligence claim in his Amended Complaint fails to mention Defendant Stokes and fails to allege any specific wrongdoing by Stokes. Despite this, Plaintiff now argues that Defendant Stokes had a duty to Plaintiff to "not falsely report a violation of [his] release conditions." (Doc. 214 at 7). Plaintiff's supports his allegations with mere argument, not fact. There is no evidence that Defendant Stokes falsely reported a violation of Plaintiff's release conditions to the court. Based on the available information, a report from a drug and alcohol testing facility indicating the presence of alcohol in Plaintiff's system, Defendant Stokes notified the Court of the results which would constitute a potential violation of Plaintiffs release orders.

Plaintiff has offered no evidence that Defendant Stokes knew or should have known that the test results may have only indicated mere exposure to alcohol rather than the consumption of alcohol by the Plaintiff. As such, even if Defendant Stokes owed Plaintiff a duty, there is no evidence that said duty was breached. Summary judgment is granted in favor of Defendant Stokes with respect to the state law negligence claim asserted against him.

### c. Payette County Defendants

Plaintiff alleges that "Defendants Payette County, Payette County Sheriff's Office, Payette County Sheriff Chad Huff…had a non-delegable duty to Plaintiff Erlebach and other similarly situated individuals to exercise due care in the process of overseeing the administration, analysis and reporting the results of court-ordered drug/urine tests" and delegated that duty. (Doc. 107).

Plaintiff's argument is purely that the Payette County Defendants owed a duty to Plaintiff relating to pretrial services for no other reason than that Idaho Code § 1-1613 requires the County to provide staff and personnel for the district court and accordingly entered into a contract with Defendant Stokes/Indianhead to fulfill that statutory requirement.

The responsibility for Plaintiff's false positive, if any, lies with former defendant Pinnacle, considering that Pinnacle is the lab that actually produced the report at issue. As noted, Plaintiff's arguments that Rostad Defendants and/or Defendant Stokes were negligent with respect to the false positive fail. Similarly, Plaintiff cannot establish that the Payette County Defendants breached any alleged duty—an alleged failure to train and supervise Defendant Stokes had no effect on Pinnacle's lab report at issue, and any training or supervision would not have altered the outcome of Plaintiff's false positive. Plaintiff's argument for the purported existence of a duty owed by Payette County and any alleged breach of that duty is not supported by any evidence. Plaintiff attempts to support his claim with mere argument and allegations, which is not sufficient

to overcome a motion for summary judgment. Accordingly, summary judgment is granted in favor of Payette County Defendants with respect to the state law negligence claim asserted against them.

## CONCLUSION

For the foregoing reasons, the Defendants Carol Bruce's, Larry Church's, Georgia Hanigan's, Chad Huff's, Anne Marie Kelso's, Payette County's, Payette County Board of Commissioners', Payette County Sheriff's Office's, and Mark Shigeta's Motion for Summary Judgment (Doc. 184); Defendants Rostad GPS & Monitoring Services LLC's, Kim Rostad d.b.a K&K Treatment's, K&K Bail Bonds LLC d.b.a K&K Treatment's Motion for Summary Judgment (Doc. 188); and Defendant Dennis Stokes' Motion for Summary Judgment (Doc. 191) are **GRANTED** in their entireties.

**IT IS SO ORDERED.**

Dated: January 27, 2022       _/s/ Douglas Harpool_
                              **DOUGLAS HARPOOL**
                              **United States District Judge**